***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at and following the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act;
4. On all relevant dates an employment relationship existed between Plaintiff-Employee and Defendant-Employer, Duke University Health System, and Duke University Health System was the insurer on the risk on the date of injury of August 20, 1992.
5. On all relevant dates, Plaintiff's average weekly wage was $779.78, and therefore she is entitled to the maximum compensation rate for the year of 1992, which is $426.00.
6. At and subsequent to the hearing, the parties submitted the following:
 a. A Notebook of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2) (pages 1-210 and 223-246) and which included the following:
 i. Industrial Commission Forms and Filings
 ii. Medical Records
 iii. Discovery Responses
 b. A Packet of Documents from the paper file originally associated with this claim, which is marked as Stipulated Exhibit (3) (pages 211-222) and admitted into the record.
7. The following depositions were taken and received into the record before the Deputy Commissioner:
 a. Dr. William F. Lestini *Page 3 
 b. Dr. Joyce A. Copeland
 *********** ISSUES TO BE DETERMINED
1. Whether Plaintiff's fall in October 2007 was causally related to her accepted injury by accident of August 20, 1992.
2. What additional medical treatment Plaintiff is entitled to pursuant to N.C. Gen. Stat. § 97-25 as the result of her compensable injury of August 20, 1992.
3. Whether Plaintiff is entitled to attendant care and a life care plan as the result of her ongoing disability and medical conditions related to her August 20, 1992, injury by accident.
4. Whether Defendant is entitled to attorney's fees for having to defend Plaintiff's claim for unrelated medical treatment pursuant to N.C. Gen. Stat. § 97-88.1.
5. Whether Defendant is entitled to be reimbursed by Plaintiff for her share of the mediator's fees from the benefits determined to be due Plaintiff, pursuant to Mediation Rule 7(c).
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was sixty-five (65) years of age, with her date of birth being May 11, 1943. Also as of that date, Plaintiff was not working in any capacity.
2. On August 20, 1992, Plaintiff was employed by Defendant-Employer as a Registered Nurse in its neurological department. Prior to August 20, 1992, Plaintiff had sustained a neck injury for which she had undergone a multi-level fusion surgery in 1990. *Page 4 
Following the fusion procedure, Plaintiff recovered fully and returned to work without incident until her accident of August 20, 1992.
3. On August 20, 1992, Plaintiff sustained an injury by accident to her neck arising out of and in the course of her employment with Defendant-Employer. Defendant has admitted the compensability of, and its liability for, this injury by accident.
4. Pursuant to the admittedly compensable neck injury, Plaintiff has received medical compensation from Defendant since 1992. Plaintiff also received various periods of total disability compensation prior to permanently leaving her employment with Defendant-Employer in 1997. Since April 1997, Plaintiff has remained totally disabled and has been paid ongoing compensation by Defendant. Defendant does not contest the fact that Plaintiff is permanently and totally disabled.
5. Plaintiff underwent an EMG and an MRI in 1993, which revealed no pseudoarthrosis of the fusion at C4-C6, but did reveal a disc protrusion which encroached upon the right neural foramina at C6-C7.
6. Plaintiff testified that, during the periods in which she was able to return to work following her injury by accident, she performed her duties while continuing to experience cervical pain.
7. Plaintiff has received a great deal of medical treatment for her compensable cervical condition since her injury by accident, primarily from Dr. Joyce A. Copeland and Dr. William F. Lestini. Plaintiff has also received treatment from Dr. Copeland for a number of unrelated medical conditions. Plaintiff testified at the hearing before the Deputy Commissioner that she has experienced dizziness and light-headedness since August 20, 1992, and that she has *Page 5 
fallen at least a dozen times since that date. Plaintiff further testified that she had reported her dizziness and falls to Dr. Copeland and Dr. Lestini.
8. In October 2007, Plaintiff got dizzy and fell. Plaintiff contends that this fall was causally related to her compensable neck injury of August 20, 1992. However, medical tests ordered by Dr. Copeland to evaluate the etiology of Plaintiff's dizziness produced negative results.
9. Separate from her cervical injury, Plaintiff has been hypertensive for years, and had experienced problems with dizziness many years ago due to this medical condition. Additionally, the lay and medical evidence establishes that Plaintiff's hypertension had been poorly controlled in recent years.
10. Plaintiff also has other medical conditions, including thyroid disease and asthma, which may have contributed to her reports of dizziness.
11. Dr. Lestini testified that nothing in the diagnostic test results for Plaintiff's compensable cervical condition reveals a cause for her dizziness.
12. Dr. Copeland testified that it was possible that the dizziness that led to the October 2007 fall was caused by Plaintiff's cervical condition, but acknowledged that Plaintiff has other conditions that needed to be evaluated first in order to definitively determine that diagnosis.
13. Plaintiff's testimony that she has experienced dizziness and light-headedness since August 20, 1992, that she has fallen at least a dozen times since that date, and that she had reported her dizziness and falls to Dr. Copeland and Dr. Lestini is not corroborated by the medical records or expert testimony. *Page 6 
14. The Full Commission finds insufficient credible lay and medical evidence of record upon which to find that Plaintiff's dizziness and related falls are the direct and natural result of, or causally related to, her August 20, 1992, injury by accident.
15. As for her lower back, Plaintiff has a significant history of problems with this area that predate the fusion that took place in 1990. Dr. Lestini testified that that there is no direct causal relationship between Plaintiff's cervical spine injury of August 20, 1992, and any symptoms she may now be experiencing in her lower back or thoracic region.
16. Insofar as Dr. Copeland's testimony suggests that there is a relationship between Plaintiff's low back and neck complaints, Dr. Lestini's testimony is given more weight, as he is the recognized spinal cord physician in this case, and Dr. Copeland expressly deferred to Dr. Lestini with respect to treatment for Plaintiff's back conditions.
17. The Full Commission finds insufficient credible lay and medical evidence of record upon which to find that Plaintiff's low back or thoracic spine symptoms are the direct and natural result of, or causally related to, her August 20, 1992, injury by accident.
18. Plaintiff has a significant number of medical conditions that are unrelated to her cervical spine injury. In addition, Plaintiff is advancing in age.
19. Plaintiff has testified that she is in need of attendant care to assist her with activities of daily living. Despite the myriad other health conditions and her advancing age, Plaintiff attributes this alleged need solely to her compensable cervical spine condition. Neither Dr. Copeland nor Dr. Lestini has ordered attendant care or a life care plan for Plaintiff.
20. Plaintiff contends that she needs assistance in performing activities around the house, including getting dressed, changing bed clothes, folding laundry, mopping, taking care of groceries, and the like. However, surveillance evidence indicates that Plaintiff, at least on *Page 7 
several days, had no observable difficulties in performing activities of daily living such as driving, putting gasoline in her car, grocery shopping, and lifting and carrying the bags of groceries.
21. Dr. Lestini, the physician whose opinion concerning Plaintiff's cervical condition is deemed more credible in this matter, has testified that Plaintiff has a twenty-five (25) pound lifting restriction. Dr. Lestini testified that he sees no need to restrict Plaintiff further, or to obtain a functional capacity evaluation.
22. Dr. Copeland, however, has more severely restricted Plaintiff, and has testified that Plaintiff has permanent restrictions of no lifting greater than five pounds, no overhead lifting or reaching, no looking up or over her shoulder, and no driving more than twenty (20) minutes.
23. Dr. Lestini's opinion regarding Plaintiff's physical limitations is afforded more weight by the Full Commission.
24. The Full Commission finds, based on the greater weight of the evidence, that the assistance Plaintiff is seeking in terms of attendant care is not medically necessary as a result of Plaintiff's compensable cervical condition, but instead constitutes ordinary expenses.
25. Dr. Copeland has indicated that while she has not ordered a life care plan, she believes a life care plan is helpful for everybody.
26. The Full Commission finds insufficient credible lay and medical evidence of record upon which to find that Plaintiff would medically benefit from having a life care plan, or that such a plan is reasonably necessary for plaintiff to function optimally, avoid potential complications related to her injuries, and live a productive life.
27. Plaintiff's prosecution of this matter was not unreasonable or indicative of stubborn, unfounded litigiousness. *Page 8 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. As the result of her admittedly compensable August 20, 1992, injury by accident, Plaintiff is permanently and totally disabled. N.C. Gen. Stat. § 97-29.
2. There is insufficient credible lay and medical evidence of record upon which to conclude that Plaintiff's dizziness and related falls are the direct and natural result of, or causally related to, her August 20, 1992, injury by accident. N.C. Gen. Stat. § 97-2(6); Holly v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 277, 538 S.E.2d 912 (2000).
3. There is insufficient credible lay and medical evidence of record upon which to conclude that Plaintiff's low back or thoracic spine symptoms are the direct and natural result of, or causally related to, her August 20, 1992, injury by accident. N.C. Gen. Stat. § 97-2(6);Holly, supra; Young, supra.
4. As the result of her August 20, 1992, injury by accident, Plaintiff is entitled to have Defendant pay for all medical expenses incurred or to be incurred which are related to her compensable cervical spine injury. N.C. Gen. Stat. § 97-25.
5. Plaintiff is not entitled to medical compensation for either her dizziness and related falls or her lumbar and thoracic medical conditions. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Although the Workers' Compensation Act allows, in certain circumstances, for the payment of attendant care to a claimant as medical compensation, or for the creation of a life case plan as a rehabilitative service, the facts of the present case as well as the nature of the *Page 9 
services requested by Plaintiff do not support a finding or holding that Plaintiff is entitled to attendant care or a life care plan. Scarboro v.Emery WorldWide Freight Corp., ___ N.C. App. ___, 665 S.E.2d 781.
7. Because Plaintiff's prosecution of this matter was not unreasonable or indicative of stubborn, unfounded litigiousness, Defendant is not entitled to have sanctions imposed pursuant to N.C. Gen. Stat. § 97-88.1.
8. In the discretion of the Full Commission, Defendant is not entitled to be reimbursed for payment of one-half of the mediation costs pursuant to Rule 7(c) of the Industrial Commission Mediation Rules.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded herein, Defendant shall pay to Plaintiff $426.00 per week for Plaintiff's lifetime.
2. Defendant shall pay for all medical expenses incurred or to be incurred by Plaintiff as the result of her August 20, 1992, injury by accident that are related to her compensable cervical spine injury. Defendant is not responsible for any other medical treatment or testing for conditions other than the compensable cervical spine condition. Defendant is also not responsible for any alleged attendant care needs of Plaintiff, or for the creation of a life care plan for Plaintiff. *Page 10 
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the compensation owed to Plaintiff. Accordingly, Defendant shall pay every fourth compensation check directly to Plaintiff's counsel of record.
4. Each side shall bear its own costs of this proceeding.
This the 30th day of June 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1